IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LARRY LEWIS FERGUSON,           )
              Petitioner,       )
                                )
        V.                      )      Criminal No. 03-72
                                )      Civil No. 11-0154
                                )
UNITED STATES OF AMERICA,       )
              Respondent.       )

MEMORANDUM OPINION

CONTI, District Judge

Pending before the court is a motion to vacate, set aside, or correct sentence by a person

in federal custody pursuant to 28 U.S.C. § 2255 (ECF No. 958) and the supplement thereto (ECF

No. 973) (collectively, "petitioner's motion") filed by *pro se* petitioner Larry Lewis Ferguson

("Ferguson" or "petitioner"). The challenges raised by petitioner relate to ineffective assistance

of counsel. Upon reviewing petitioner's motion and the government's response to petitioner's

motion (ECF No. 977), the court will deny the motion because petitioner cannot show sufficient

prejudice or that his counsel's representation was deficient.

**I. Background**

There was a joint investigation of a large scale drug conspiracy between federal and local

officers. The conspiracy involved the illegal drug activities of Michael Good ("Good") on the

North Side of the City of Pittsburgh, Pennsylvania. United States v. Ferguson, 394 F. App'x 873

(3d Cir. 2010). On January 23, 2003, Ferguson, who was engaged in drug transactions with

Good, was observed by the police with Good and the police saw Ferguson place drugs in a Jeep.

Ferguson drove the Jeep and was followed by the police. He was stopped by the Pittsburgh

Police for a traffic infraction on the corner of Sixth and Penn Avenues. (ECF No. 959-1 at 7).

After discovering that Ferguson did not have a valid driver's license, the police officers conducted a search to determine if he possessed any weapons or drugs. Id. The police officers requested that they be able to search Ferguson's vehicle and Ferguson consented. Id. During the search of the vehicle, the police officers found heroin stamp bags labeled "soprano" and powder cocaine in the center console. Id. Monica Stringer ("Stringer") was a passenger in Ferguson's vehicle at the time of the traffic stop, but she was released at the scene. Id. Ferguson was arrested and charged with possessing the drugs found in the middle console of his car. Id. In August 2004, the government filed a superseding indictment charging Ferguson with conspiracy to possess with intent to distribute 100 grams or more of heroin (count one), as well as six substantive counts of possession with intent to distribute heroin based on phone calls recorded through a wiretap investigation (counts four, seven, nine, ten, twelve and twenty). Id. at 8. The government prior to trial filed an information with respect to Ferguson under 21 U.S.C. § 851. (ECF No. 455).

Count twenty was based on the January 23, 2003 arrest of Ferguson. Id. Ferguson pled not guilty to all counts, and the trial began on May 9, 2005, but ended in a mistrial on June 29, 2005. A retrial began on January 9, 2006. Id. During that retrial, Ferguson's trial attorney, Robert Stewart ("Stewart"), argued that a new government witness Arlando Crowe ("Crowe") should not be permitted to testify because Ferguson had not received any "Jencks Material" or reports from the government about that witness.[1] Id. Crowe testified despite Ferguson's opposition. (ECF No. 977 at 5). Ferguson moved for a judgment of acquittal, which was denied. Id. The jury found Ferguson guilty at six counts (counts one, four, seven, ten, twelve and twenty) and not guilty at count nine. Id. On June 6, 2006, Stewart was replaced as Ferguson's counsel by John Halley ("Halley"), who filed a motion for new trial on September 1, 2006, on

---

[1] See footnote 2 infra.

the basis of "the prejudicial admitting of jailhouse witness Arlando Crowe's testimony during the retrial." (ECF No. 959-1 at 9). The court denied that motion on October 13, 2006, and sentenced Ferguson to 360 months' imprisonment. Id. Defendant challenged his conviction on count one and count twenty on appeal. (ECF No. 977 at 8). Despite these challenges, the Court of Appeals for the Third Circuit affirmed Ferguson's convictions on September 21, 2010. Id. at 9.

On February 7, 2011, Ferguson filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (ECF No. 958), as well as a motion for leave to file a brief in excess of length limitation under local rule 7 (ECF No. 959) and a memorandum of facts and law in support of his petition to vacate judgment, convictions, and sentences pursuant 28 U.S.C. § 2255. (ECF No. 959). Ferguson raised at least eleven claims, all of which challenge his conviction at count twenty under 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel. On April 12, 2011, Ferguson filed a "Motion to Supplement Movant's 28 U.S.C. 2255 Writ to Vacate and Memorandum of Facts and Law Brief under Rule (7) Governing 2255 Proceedings," (ECF No. 973), as well as a "Request to Correct Issue #7 of 28 U.S.C. 2255 Petition to Vacate Memorandum of Facts and Law Brief." (ECF No. 974).

On April 29, 2011, the government filed its response to Ferguson's 28 U.S.C. § 2255 motion and supplements thereto. (ECF No. 977). Ferguson filed a reply brief to the government's response on June 9, 2011. In December 2011, Ferguson made a motion "Requesting the Court to Grant Him Leave to Supplement/Amend His Previously Filed 28 U.S.C. 2255 Motion Pursuant to Fed. R. Civ. P. Rule 15(c)(1)(b)" (ECF No. 992), as well as a "Memorandum of Facts and Law in Support of Supplement/Amendment under Fed. R. Civ. P. Rule 15(c)(1)(b)." (ECF No. 993). On January 6, 2012, the government filed an "Opposition to

Ferguson's Motion to Supplement/Amend his §2255 Motion." (ECF No. 994). On January 12, 2012, Ferguson filed a "Memorandum of Facts and Law in Support of Petitioner's Motion to Supplement/Amendment under Rule 15(c)(1)(b) Pertaining to Petitioner's Previously Filed 28 U.S.C. §2255 Motion to Vacate, Set Aside, or Correct Sentence." (ECF No. 996). On January 19, 2012, Ferguson filed a reply to the Government's response to his Rule 15(c)(1)(b) motion. (ECF No. 998).

## II. Standard of Review

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). An evidentiary hearing is not required, however, if the court determines that the motion, files, and records of the case conclusively support that the motion should be denied as a matter of law. Id.

Under § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). In Hill v. United States, 368 U.S. 424 (1962), the Supreme Court of the United States read the statute as stating four grounds upon which relief can be claimed:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

Id. at 426-27 (quoting 28 U.S.C. § 2255(a)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## III. Discussion

### A. Ineffective Assistance of Counsel – General Framework

Petitioner's claims are based upon ineffective assistance of counsel in violation of the Sixth Amendment, which is a proper ground for relief under 28 U.S.C. §2255. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). The burden is on the petitioner to establish an ineffective assistance of counsel claim. United States v. Cronic, 466 U.S. 648, 658 (1984). The Supreme Court has stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 687. The petitioner is required to prove: (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness, and (2) prejudice, meaning there is a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 668, 687. A petitioner's failure to satisfy one of these elements negates a district court's need to consider the other; furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697. The Court in Strickland explained

5

that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

When a court decides whether a counsel's performance was deficient, it must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 687-88. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. With respect to the second prong of the Strickland test, a petitioner must show that the deficient performance prejudiced him and resulted in an "adverse effect on the defense." Id. at 692. The question for the reviewing court becomes "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Judicial scrutiny of a trial counsel's performance must be highly deferential and a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007) (quoting Strickland, 466 U.S. at 689). A court's "review of ineffective assistance of counsel claims does not permit [it], with the benefit of hindsight, to engage in speculation about how the case might best have been tried." Hess v. Mazurkiewicz, 135 F.3d 905, 908 (3d Cir. 1998).

To rebut the presumption that the trial counsel's performance fell within the range of reasonable professional assistance, the petitioner "must show either that (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005). Yet,

"strategic choices made [by trial counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-91.

To satisfy the prejudice requirement under Strickland for ineffective assistance of appellate counsel, the petitioner must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." United States v. Mannino, 212 F.3d 835, 845 (3d Cir. 2000). The test under Strickland for a claim of ineffective of appellate counsel is "not whether petitioners would likely prevail upon remand, but whether [the Court of Appeals] would have likely reversed and ordered a remand." Id. at 844.

The Strickland standard is more stringent when applied to a petitioner's appellate counsel. An appellate counsel who files a merits brief "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). "[I]t is difficult to demonstrate that counsel was incompetent" because "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." Id. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see Jones v. Barnes, 463 U.S. 745, 750-54 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies [prior precedents]."); Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) ("It is a well-established principle that counsel decides which issues to pursue on appeal."). It follows, therefore, that "[as] a general matter, it is not inappropriate for counsel, after consultation with the client, to override the wishes of the client when exercising professional judgment." Id.

As noted, petitioner makes at least eleven arguments based upon ineffective assistance of counsel. Each argument will be separately addressed. The court, however, will not repeat discussion when the issues overlap.

**B.  First Issue -- Stewart and Halley Failed to Argue there was "Egregious Prosecutorial Misconduct" after the Assistant United States Attorney Committed "Fraud on the Court" by Using a "Jencks Act Material Ruse"**

In Ferguson's first issue, he contends that Stewart and Halley rendered ineffective assistance of counsel by failing to argue that Assistant United States Attorney Troy Rivetti ("Rivetti") committed egregious prosecutorial misconduct based on a "Jencks Act Material Ruse." That argument is unavailing. When evaluating claims under § 2255, the Court of Appeals for the Third Circuit has held that "vague and conclusory allegations . . . may be disposed of without further investigation by the District Court." United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000). Consequently, Ferguson's claims that the government "fabricated" Crowe's testimony, as well as the report containing the jailhouse interview of Crowe and the "unnamed letters," are insufficient to prevail on a § 2255 motion. Ferguson proffers no facts or evidence that this material was "fabricated" and merely states the claim, multiple times, without any explanation concerning the alleged fabrication of the material.

Ferguson's argument that Crowe's letter and the report about Crowe's interview do not qualify as Jencks material under 18 U.S.C. § 3500 is likewise unavailing. Section 3500 states:

> (a) no statement or report in possession of the United States which was made by a Government witness (other than the defendant) shall be subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
> . . .
> (e) The term "statement". . . means (1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an

oral statement made by said witness and recorded contemporaneously with the make of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500.

In light of the text of § 3500, the prejudice prong of <u>Strickland</u> is not implicated by Crowe's testimony, the  letter, or the report about Crowe's jailhouse interview.  The letter and report qualify as <u>Jencks</u> material within the meaning of the statute and, therefore, even if Ferguson's requested argument has been raised at trial or post trial by either attorney, it would have been frivolous.  The assistance of Stewart and Halley as Ferguson's counsel was not ineffective because there "can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999).

### C.  Second Issue -- Halley Rendered Ineffective Assistance of Counsel by Failing to Argue for a New Trial due to Stewart's Failure to Argue Prosecutorial Misconduct after Rivetti's "Jencks Act Material Ruse"

Ferguson asserts that Halley rendered ineffective assistance of counsel because "he knew or should have knew to investigate the record" and argues for a new trial based on Stewart's failure to argue prosecutorial misconduct after Rivetti committed an alleged "fraud on the court" using a "Jencks Act Material Ruse."  (ECF No. 959-1 at 44).  These arguments lack merit.  An appellate counsel is under no obligation to raise every colorable claim suggested by a client. <u>Smith</u>, 528 U.S. at 288.   An appellate counsel has the duty to "select among [the claims] to maximize the likelihood of success on appeal."  <u>Id.</u>  Halley did not render ineffective assistance of counsel by failing to argue for a new trial in response to Stewart's alleged failure to argue prosecutorial misconduct.  A prosecutorial misconduct claim against Rivetti would have been

meritless in light of the trial record, which reflects the timing surrounding Crowe's Jencks material.[2]  Ferguson's claim fails under Strickland because his defense suffered no prejudice as a result of Halley's abstention from arguing for a new trial on these bases.  It is noteworthy that Ferguson's arguments are largely bald conclusions which cannot support a § 2255 motion.  See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir 2010).

### D.  Third Issue -- Stewart Rendered Ineffective Assistance of Counsel when He Failed to Investigate Whether Jailhouse Informants Existed after the Prosecution Added Crowe to the Witness List

Ferguson argues that Stewart rendered deficient performance prior to retrial when he failed to investigate "alleged informants to determine whether they existed, instead of [accepting] the Prosecutor['s] statement to the court at the evidentiary hearing that jailhouse witness Arlando Crowe was added to the Government's witness list prior to retrial...based on information from these alleged informants." (ECF No. 959-1 at 37).  Once again, Ferguson makes conclusory statements of law that need not be further investigated by this court.  See Thomas, 221 F.3d at 437.  He contends that "Crowe's testimony was fabricated by the Government in the middle of retrial . . . [and] was highly prejudicial and created a miscarriage of justice."  (ECF No. 959-1 at 38).  Ferguson cites United States v. Gray, 878 F.2d 802 (3d Cir. 1989), to support his conclusion that Halley was ineffective because of his "failure to conduct any pre-trial investigation."

Ferguson, however, fails to indicate any prejudice suffered by his defense that would legitimize his claim of ineffective assistance of counsel under Strickland.  Ferguson has the burden of showing that "there is a reasonable probability that, but-for counsel's unprofessional

---

[2] The government in its response detailed the events relating to Crowe's testimony (ECF No. 977 at 16-21), including that the Jencks material was turned over four days after Crowe was interviewed and the court provided Ferguson five days to review Crowe's Jencks material.

errors of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  The Court of

Appeals in <u>Gray</u> explained that "the courts of appeal are in agreement that failure to conduct any

pretrial investigation generally constitutes a clear instance of ineffectiveness." <u>Gray</u>, 878 F.2d at

711 (citations omitted).  <u>Strickland</u> dictates that a court must take into account that "the range of

reasonable professional judgments is wide."  <u>Id.</u>  In this particular case, there are no claims that

Stewart completely abstained from conducting a pretrial investigation.  Ferguson argues that

Stewart did not inquire into the existence of the alleged government informants.  Even if this

claim is assumed to be true, there is nothing proffered by Ferguson that indicates how Stewart's

failure to investigate the informants prejudiced his defense.

The court notes that Ferguson does not point to any jailhouse witness who should have

testified on his behalf.  Ferguson called at least one jailhouse witness, Frederick Neal, who

testified that Ferguson instructed him to lie.  It was also alleged that Crowe was threatened by

Ferguson after Ferguson found out that Crowe was placed on the government's witness list.  In

light of these occurrences, the court cannot find that Stewart's decision not to call other

witnesses was prejudicial.  In any event, there was nothing raised by Ferguson to show he was

prejudiced by Stewart's alleged failure to investigate the government informants; therefore, the

<u>Strickland</u> standard for ineffective assistance of counsel was not satisfied with respect to this

argument.

### E.  Fourth Issue -- Stewart Rendered Ineffective Assistance of Counsel because He Failed to file a Pretrial Motion to Suppress Government Drug Exhibit Evidence used with Respect to Count Twenty of the Superseding Indictment

Ferguson argues that Stewart violated his Sixth Amendment right to effective assistance

of counsel by failing to file a pretrial motion to suppress the government's drug exhibit 27 (A-C).

Ferguson's argument fails under the <u>Strickland</u> standard.  The Fourth Amendment "prohibits

unreasonable searches and seizures by the government and its protections extend to brief investigatory stops of person or vehicles. . . ." United States v. Arvizu, 534 U.S. 266, 273 (2002). A pretrial motion to suppress is a "tool of judicial control" and "cannot be properly invoked to exclude the products of legitimate police investigative techniques. . . ." Terry v. Ohio, 392 U.S. 1, 13 (1968). When a police officer observes "unusual conduct which leads him reasonably to conclude . . . that criminal activity may be afoot," conducting a search is reasonable under the Fourth Amendment. Id.at 30.

The Court of Appeals for the Third Circuit has stated that "the Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime." United States v. Mosley, 454 F.3d 249, 252 (2006) (citing Whren v. United States, 517 U.S. 806, 116 (1996)). Once a car has been legally stopped in response to a traffic violation, the police "may escalate the encounter by visually inspecting the inside of the car...and asking questions of the occupants." Id. The Court of Appeals for the Third Circuit in United States v. Givan stated that "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." 320 F.3d 452, 458 (3d Cir. 2003).

In Pennsylvania v. Mimms, the Supreme Court concluded that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." 434 U.S. 106, 111 n.6 (1977). An officer may conduct a "pat down" after a legal traffic stop if he or she reasonably concludes that "the person whom he [or she] had legitimately stopped might be armed and dangerous." Id.at 111. The standard for a reasonable search under the Fourth

Amendment is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27. If the driver of a car which was legally stopped for a traffic violation consents to having the car searched by the police, the burden is on the Government to prove that consent was voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548 (1968).

In determining whether a defendant was lawfully arrested under Pennsylvania law, "law enforcement authorities must have a warrant . . . unless they have probable cause to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon." Commonwealth v. Clark, 735 A.2d 1248, 1251 (Pa. 1999). The Fourth Amendment requires reasonableness in determining whether probable cause exists. See United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005) (stating that "[t]he touchstone of the Fourth Amendment is reasonableness"). The Supreme Court in Draper v. United States stated:

> In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause exists where the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

358 U.S. 307, 313 (1959) (citations omitted) (alterations in original).

In his Memorandum and Facts in support of his § 2255 motion, Ferguson contends that Stewart should have filed a pretrial motion to suppress government drug exhibit 27 (A-C) because the officers never issued an official traffic citation in response to the traffic stop they conducted on January 23, 2003. (ECF No. 959-1 at 23). Although Ferguson was never issued a formal traffic violation, he does not contest that he violated traffic laws by failing to stop at a red

light.  In light of the holding of Mosley, the stop was lawful because a traffic infraction can be used as a pretext for investigation into the drug activity.  Mosley, 454 F.3d at 252.  Therefore, Ferguson's argument that Stewart was ineffective because he failed to file a pretrial motion to suppress the government's drug exhibit fails under the Strickland standard because "counsel cannot be deemed ineffective for failing to raise a meritless claim."  Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

Ferguson also contends that Stewart should have filed a pretrial motion to suppress government drug exhibit 27 (A-C) because Good's testimony with respect to the amount of heroin that he sold to petitioner was inconsistent with the police report, the police officers' testimony at trial, and other evidence the government presented at trial.  (ECF No. 959-1 at 24). This argument is without merit because even if Stewart filed a pretrial motion on this basis, the evidence would have been admitted.  Ferguson consented to the search of the vehicle.  Under those circumstances, the police officers did not violate Ferguson's Fourth Amendment rights in searching and seizing the drugs.  It would be inappropriate to "exclude the products of legitimate police investigative techniques. . . ."  Terry, 392 U.S. at 13 (1968).  Stewart's performance, therefore, cannot be considered deficient under Strickland.

Ferguson argues that Stewart was ineffective because he failed to file a motion to suppress government drug exhibit 27 (A-C) due to a lack of probable cause to arrest Ferguson. Ferguson argues there was insufficient evidence that he personally possessed the drugs found in his vehicle.  (ECF No. 959-1 at 25).  The Pittsburgh Police did not lack probable cause to arrest Ferguson on January 23, 2003.  Ferguson was lawfully stopped for violating traffic laws--a fact that Ferguson does not contest.  See Mosley, 454 F.3d at 252.  Ferguson was lawfully asked to step out of his vehicle during the traffic stop.  See Mimms, 434 U.S. at 111 n.6.

According to Bumper, 391 U.S. at 548, the government has the burden of proving that voluntary consent was given to search a person's vehicle during a traffic stop. Ferguson alleviated the government's burden by conceding that he consented to a search of his vehicle. (ECF No. 959-1 at 20). After being permitted to search Ferguson's vehicle, the police discovered heroin and cocaine, which led to Ferguson's arrest. Probable cause was not lacking in light of the drugs in the vehicle driven by Ferguson. There was also the wire-tap evidence acquired by the officers, and the surveillance of Ferguson prior to his arrest. See Draper, 358 U.S. at 313 ("Probable cause exists where the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."). Stewart was not ineffective under Strickland for failing to file a pretrial motion to suppress government drug exhibit 27 (A-C) because based on the evidence, the police had probable cause to arrest Ferguson. Under those circumstances, since the claim is meritless, Stewart's performance is not deficient. Saunders, 165 F.3d at 253.[3]

### F. Fifth Issue -- Stewart Rendered Ineffective Assistance of Counsel because He Failed to file a Pretrial Motion to Dismiss "Purpose Prejudicial Hearsay Testimony" from D.E.A. Case Agents Jimenez and Joseph as well as Pittsburgh Police Officers Sgts. O'Neill and Murray Regarding the Wiretap and Surveillance Investigation

Ferguson argues that Stewart was ineffective because he failed to "seek suppression of any purpose prejudicial hearsay testimony" from D.E.A. Case Agents Jimenez and Joseph and Pittsburgh Police Officers Sgts. O'Neill and Murray concerning the wiretap and surveillance investigation. (ECF No. 959-1 at 32). This argument fails under the Strickland standard.

---

[3] Ferguson briefly posits an additional argument that the government's drug exhibit 27 (A-C) should have been suppressed because of the similarity of locations in which drugs were found in Good's vehicle. This argument is not addressed because Ferguson makes a threadbare conclusion. This argument is not based on any legal authority. See Thomas, 221 F.3d at 437. Ferguson points to perceived discrepancies about the amount of heroin stamp bags. This argument is likewise unavailing because it does not affect the admissibility of evidence.

Ferguson never clearly defines what he means by "purpose prejudicial hearsay testimony." Nonetheless, it is clear that Ferguson's main contention with respect to the testimony of the government agents is that their testimony caused the jury to believe that the traffic stop and his subsequent arrest were based on the wiretap and surveillance investigation, rather than a traffic violation. Assuming those contentions to be true, it would have been unavailing for Stewart to file a motion to suppress. A traffic stop can be used as a pretext to a larger investigation; therefore, Ferguson's defense was not prejudiced by the testimony. See Mosley, 454 F.3d at 252

### G. Sixth Issue -- Stewart Rendered Ineffective Assistance of Counsel when He Failed to Object to the "Prejudicial and Misleading" Jury Instruction Regarding Constructive and Actual Possession of Narcotics

Ferguson argues that Stewart violated his Sixth Amendment right to effective assistance of counsel when Stewart failed to object to the jury instruction pertaining to constructive and actual possession of the drugs found in the Jeep on January 23, 2003. (ECF No. 959-1 at 39). His main contention with respect to the jury instruction is that it was "prejudicial and misleading" in light of count twenty which was "the only substantive count charged in the superseding indictment in which the Government argued to the jury that petitioner exclusively possess[ed] physically Government Drug Exhibit Evidence [27 (A-C)]." (ECF No. 959-1 at 40). Ferguson contends that Stewart should have sought a jury instruction which explained to the jury that the government must prove constructive possession beyond a reasonable doubt "when two people have equal access and joint occupancy over drugs allegedly found in a vehicle during a traffic stop." Id. Ferguson cites United States v. Bowen, 436 F.3d 1009 (10th Cir. 2006), to support his position that a "jury may not infer dominion and control over the object based solely on joint occupancy, mere control over [the] place in which the object is found is [insufficient] to establish constructive possession." (ECF No. 959-1 at 40).

The Court of Appeals for the Third Circuit has held that "the essential elements of the substantive offense of possession of a controlled substance with intent to distribute are that the defendant (1) knowingly possessed a controlled substance with (2) the intent to distribute it." United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008) (citing United States v. Bobb, 471 F.3d 491, 497 (3d Cir. 2006)). A jury can convict a defendant of a possession charge when actual or constructive possession of the controlled substance is established. Id. Actual or constructive possession may be established by either direct or circumstantial evidence. Bobb, 471 F.3d at 497. Constructive possession can be found when "the defendant was knowingly in a position, or had the right, to exercise 'dominion and control' over the drug." Id. Dominion and control are not established by "mere proximity to the [contraband], or mere presence...where it is located or mere association with the person who does control the [contraband]." United States v. Jenkins, 90 F.3d 814, 818 (3d Cir.1996) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir.1993)).

Ferguson's claim for ineffective assistance of counsel fails under the first prong of Strickland because Stewart's performance was not deficient. Ferguson is requesting an instruction explaining that his ownership of the vehicle in which the drugs were found did not establish that he possessed the narcotics. Stewart cited United States v. McKissock, 204 F.3d 1282 (10th Cir. 2000), to ensure that the jury instruction included the principle that Ferguson's control over the area where the drugs were found was not a per se indicator of constructive possession. The jury was properly instructed that control over an area does not per se establish constructive possession.[4]

---

[4] Included in the government's response to Ferguson's § 2255 motion is a citation to page 45 of the trial transcript from February 21, 2006 which indicates that this court instructed the jury: "Mere proximity and knowledge of the existence and location of the contraband is insufficient to prove dominion and control." (ECF No. 977 at 41-42).

If Stewart, however, was in fact deficient in not objecting to the jury instructions provided at Ferguson's trial, the second prong of <u>Strickland</u> would still prevent Ferguson from having a viable ineffective assistance of counsel claim. On direct appeal, the Court of Appeals for the Third Circuit affirmed the jury's decision to convict Ferguson under count twenty and, in doing so, found that there was adequate evidence that he constructively possessed the heroin and cocaine found in his vehicle on January 23, 2003. This finding indicates that even if Stewart's representation was deficient, Ferguson's defense was not prejudiced.

### H.  Seventh Issue -- Stewart Rendered Ineffective Assistance of Counsel when He Failed to Investigate and Produce the Criminal History of Monica Stringer for Impeachment Purposes of the Pittsburgh Police

Ferguson argues that his Sixth Amendment right to effective assistance of counsel was violated when Stewart failed to investigate the criminal history of Monica Stringer, the passenger in his vehicle on January 23, 2003, to impeach the Pittsburgh Police. This argument fails under <u>Strickland</u>. The <u>Strickland</u> court stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691. When evaluating counsel's performance in response to a § 2255 motion, a court must determine whether the "challenged action might be considered trial strategy." <u>Hankerson</u>, 496 F.3d at 310 (citations omitted). A court cannot review an ineffective assistance of counsel claim "with the benefit of hindsight" and "engage in speculation about how the case might best have been tried." <u>Hess</u>, 135 F.3d at 908. Furthermore, "it is not inappropriate for counsel, after consultation with the client, to override the wishes of the client when exercising professional judgment. <u>Sistrunk</u>, 96 F.3d at 670.

Ferguson fails to indicate how Stewart's abstention from investigating Stringer's criminal history made his performance as counsel deficient or prejudiced Ferguson's defense. Stewart

was not obligated to pursue every argument that Ferguson suggests. See Sistrunk, 96 F.3d at 670.

Stringer had no outstanding warrants. Stringer was not the subject of the wiretap investigation or the police surveillance and was not the individual who was seen placing drugs into the vehicle that was subject to the traffic stop. Ferguson wanted Stewart to use Stringer's alleged criminal history to indicate the possibility that the Pittsburgh Police made a mistake in arresting him rather than Stringer. Given the evidence of record that Ferguson was seen placing drugs in the vehicle, it is not reasonably probable that Monica Stringer's criminal history would have caused the jury to have a reasonable doubt about Ferguson's guilt. Ferguson's argument fails under both prongs of Strickland.

**I. Eighth Issue -- Stewart Rendered Ineffective Assistance of Counsel when He Failed to Object to the Prosecutor "Shifting the Burden of Proof to the Defense to Produce at the Retrial Monica Stringer"**

Ferguson contends that his Sixth Amendment right to effective assistance of counsel was violated when Stewart did not object to a statement made by Rivetti during his closing argument which, according to Ferguson, insinuated that the defense had the burden of producing Monica Stringer as a witness. This argument fails under the Strickland standard. According to the government, after Stewart in his closing argument pondered the whereabouts of Monica Stringer and asked "why no one can tell [the court] about [Monica Stringer]," Rivetti responded with the following statement:

> This Monica person, look, if he thinks—if Mr. Stewart thinks
> Monica needs to be put on the stand and questioned, he brought in
> all these witnesses, put her on the stand. He knows how to do that.

(TT 2/22/06 at 78). Ferguson claims that this statement prejudiced his defense by making the jury believe that "petitioner could [have] called as a witness Stringer to testify about the drugs

allegedly found in the vehicle while she was a passenger" or "that petitioner didn't call her because he was afraid of what she might testify." (ECF No. 959-1 at 43).

Although Ferguson does not indicate a specific action that he would have preferred Stewart to take in response to Rivetti's statement, the most logical objection would have been that Rivetti committed prosecutorial misconduct which caused a mistrial. Prosecutorial misconduct during closing argument "including an improper burden-shifting argument . . . [necessitates] a new trial only where the remarks were improper and prejudiced the defendant's substantial rights." United States v. Johnson, 277 F. App'x 890, 895 (11th Cir. 2008) (citing United States v. Wilson, 149 F.3d 1298 (11th Cir. 1998)). A prosecutor "may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof [but] it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, 'particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness.'" United States v. Hernandez, 143 F.3d 1433, 1439 (11th Cir. 1998) (quoting United States v. Blackman, 66 F.3d 1572 (11th Cir. 1998)). Statements by a prosecutor on the defense counsel's failure, rather than the defendant's failure, to counter or explain evidence does not violate a defendant's Fifth Amendment right not to testify. Id.

It follows that it would have been frivolous for Stewart to argue for a mistrial in response to Rivetti's statement during closing arguments. If the defense raised an issue about the government's failure to call a potential witness, there is no prosecutorial misconduct when the prosecutor points out the dual-subpoena power possessed by both parties to a criminal action. The Strickland standard is not met because Stewart is under no duty to make meritless arguments. See Saunders, 165 F.3d at 253.

**J.  Ninth Issue -- Stewart Rendered Ineffective Assistance of Counsel by Creating a Conflict of Interest by Referring to Ferguson as "Institutionalized" during his Closing Argument**

Ferguson argues that Stewart violated his Sixth Amendment right to effective assistance of counsel by "creating a conflict of interest, when counsel during closing arguments argued to the jury that petitioners was institutionalize [sic]." (ECF No. 959-1 at 41).   The portion of Stewart's closing argument that Ferguson refers to is as follows:

> MR. STEWART: Ladies and gentleman, you heard Larry Ferguson on the stand. I am going to guess that none of you have ever met an individual like Larry Ferguson before.   Fortunately or unfortunately in my career I have.   *Larry is what we call institutionalized*. He has told you – and he wasn't bashful about it – he has spent the majority of his adult life in prison.  And when that happens, you turn out like Larry Ferguson.  You find out real fast that if you don't stand up for yourself in the prison yard, you are a punk, and you don't want to know what happens to punks in prison.
>
> So what do you do? You bark at people. And if nothing else, if you get nothing else from this trial, Larry Ferguson barks.  And he barks when he doesn't like people to imply things and he barks when he thinks somebody is trying to pull something on him, and he barks when he feels like he is being treated unfairly, and unfairly he was.  He told you, they thought I was reading something, took me downstairs and searched me and found nothing. Why? Just because he's loud Larry Ferguson.

(TT 2/21/06 at 184-85 (ECF No. 803)(emphasis added)).  Ferguson's argument alleging ineffective assistance of counsel based on these statements does not meet the <u>Strickland</u> standard.

The Supreme Court has stated that "[the] right to effective assistance [of counsel] extends to closing arguments." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (citing <u>Bell v. Cone</u>, 535 U.S. 685, 701-702 (2002)).  In <u>Yarborough</u>, the Court stated:

> [C]ounsel has wide latitude in deciding how to best represent a
> client, and deference to counsel's tactical decisions in his closing
> presentation is particularly important because of the broad range of
> legitimate defense strategy at that stage. . . . Judicial review of a
> defense attorney's summation is therefore highly deferential – and
> doubly deferential when it is conducted through the lens of federal
> habeas.

Id. at 6.  While Stewart may have chosen another word, he was not deficient for referring to

Ferguson as "institutionalized."  Throughout the trial, Ferguson exhibited questionable behavior.

It is plausible that it was part of Stewart's trial strategy to provide an excuse for Ferguson's trial

behavior by explaining his history of incarceration and drug addiction—all of which Ferguson

highlighted in his own testimony and which Ferguson agrees was the basis for his defense.

(See ECF No. 959-1 at 41).

Ultimately, as dictated by the Supreme Court in Yarborough, defense counsel is left to

decide the best way to represent a particular client.  Highlighting Ferguson's past to try to justify

his behavior was a reasonable trial strategy.  See Yarborough, 540 U.S. at 6 (holding that counsel

was not ineffective for bringing up a client's past criminal history and explaining that

misstatements could be attributed to the client's lack of education).   Ferguson's argument does

not meet the Strickland standard because Stewart's statement did not render his assistance as

counsel deficient.

### K.  Tenth Issue -- Stewart Rendered Ineffective Assistance of Counsel when He Failed to Seek Severance of Count Twenty per Federal Rule of Criminal Procedure 14.

Ferguson contends that Stewart violated his Sixth Amendment right to effective

assistance of counsel when he failed to file a Rule 14 motion to sever count twenty from the

other counts of the superseding indictment.  This argument fails under Strickland.   Rule 14

provides relief if "the joinder of offenses . . . in an indictment . . . for trial appears to prejudice a

defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The defense must pinpoint "clear and substantial prejudice" resulting in an unfair trial when making a Rule 14 severance motion. United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992) (quoting United States v. Eufrasio, 935 F.3d 553, 568 (3d Cir. 1991)). It is insufficient to show that severance would have increased the defendant's likelihood of acquittal. Id. "[C]ourts must balance the public interest in joint trials against the possibility of prejudicial joiner." Id. In cases of conspiracy, principles of judicial economy weigh in favor of joint trials. Id.

If Stewart would have made a motion to sever count twenty of the superseding indictment one of two results would have occurred: (1) the motion would have been denied due to the defense's inability to prove that the inclusion of count twenty would have caused "clear and substantial" prejudice to Ferguson's defense; or (2) the motion would have been granted yet Ferguson would have been convicted of the same counts just at different trials. The Court of Appeals for the Third Circuit in McGlory, 968 F.2d at 341, found that joinder was appropriate in that case because judicial economy outweighed the possibility of prejudice. Likewise in this case, judicial economy in the joinder of the counts outweighed any prejudice. Stewart was not ineffective for failing to make a meritless claim for severance when the same evidence introduced with respect to count twenty would have been introduced in the conspiracy count (wiretap recordings, police surveillance, and witness testimony). See Saunders, 165 F.3d at 253. The Court of Appeals for Third Circuit affirmed Ferguson's convictions under counts one and twenty of the superseding indictment and denied Ferguson's assertions that each count was not supported by sufficient evidence. It is unlikely that the severance of count twenty from count one would have yielded a different result. Stewart's alleged failure to make a Rule 14 severance

motion with respect to count twenty does not satisfy the <u>Strickland</u> standard for ineffective assistance of counsel because even if severance would have been granted, Ferguson cannot show the likelihood of a different result.

**L.   Eleventh Issue -- Stewart Rendered Ineffective Assistance of Counsel by Failing to Foresee the Need to Seek a Severance for Purposes of Retrial Based on a Statement Allegedly Made by a Juror in the Original Trial**

Ferguson argues that Stewart denied him his Sixth Amendment right to effective assistance of counsel by failing to foresee "the need to seek a severance prior to the retrial, after discovering during the first trial which was declared a mistrial for jury misconduct that one of the juror's stated . . . that she was not going to find petitioner guilty, but was going to find petitioner's alleged co-conspirators guilty. . . ." (ECF No. 973 at 1).  This argument fails under the <u>Strickland</u> standard.  The Court of Appeals for the Third Circuit has stated that a severance motion under Rule 14 will not be granted just because "severance would [increase] the defendant's chances of acquittal."  <u>McGlory</u>, 968 F.2d at 340.  A primary consideration when determining whether a defendant is entitled to a severance under Rule 14 is "whether the jury reasonably can be expected to compartmentalize the evidence as it relates to separate defendants."  <u>United States v. De Larosa</u>, 450 F.2d 1057, 1065 (3d Cir. 1971).

In light of these precedents, it would have been unavailing for Stewart to seek a severance before retrial.  The statement that Ferguson alleges was made by a juror at the original trial actually weighs against allowing a severance under Rule 14.  First, Ferguson could not have successfully sought a severance based on the chance that it might increase his chances of acquittal.  <u>See</u> <u>McGlory</u>, 968 F.2d at 340.  Second, the jury being able to distinguish Ferguson's culpability from his coconspirators' culpability shows that a jury could have been reasonably expected to compartmentalize the evidence as it pertained to each defendant.  <u>See</u> <u>De Larosa</u>,

450 F.2d at 1065. Stewart was not ineffective for failing to move for a severance prior to retrial under Rule 14 because trial counsel is not obligated to pursue meritless claims. See Saunders, 165 F.3d at 253.

## IV. Conclusion

As discussed above, none of the issues raised by Ferguson are sufficient to implicate ineffective assistance of counsel under Strickland. Under those circumstances, there is no need for an evidentiary hearing because the motion, files and records of the case show conclusively that Ferguson is not entitled to relief. Petitioner's motion must be denied.

## V. Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue. See 3rd Cir. LAR. 22.2. A certificate of appealability will only be issued upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that petitioner did not show a substantial denial of a constitutional right. Therefore, a COA should not issue.

## V. Order

An appropriate order will be entered.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


Dated: November 2, 2012

cc: Larry L. Ferguson
    FCI Allenwood Medium
    P.O. Box 2000
    White Deer, PA 17887